**In re Marion THURMAN, Debtor.**

**William L. NEWPORT, Trustee,**

v.

**Marion THURMAN.**

**No. 3:90–1036.**

United States District Court,
M.D. Tennessee,
Nashville Division.

May 8, 1991.

Randal S. Mashburn, Heiskell, Donelson, Bearman, Williams & Kirsch, Nashville, Tenn., for William L. Newport.

C. Bennett Harrison, Jr., Nashville, Tenn., for Marion Thurman.

## MEMORANDUM

WISEMAN, Chief Judge.

This case arose from the failure of a sole proprietorship in Nashville, Tennessee, and the subsequent personal bankruptcy filing of its owner, Marion Thurman, in 1990. Thurman sought to exempt the cash surrender value of a life insurance policy from the claims of his creditors pursuant to T.C.A. § 56-7-201. The bankruptcy court held that Thurman could not exempt the life insurance policy in question. Thurman has appealed the bankruptcy court decision. For the following reasons, the Court AFFIRMS Judge Lundin's opinion.

### I.

Marion Thurman purchased an insurance policy on his life in 1979 and named his business, "Marion Thurman Builder," as the beneficiary. After declaring bankruptcy in 1990, Thurman attempted to declare his life insurance policy as an exemption under Tennessee law. The cash surrender value of the life insurance policy is $42,000. *See* Debtor's Amendment to Schedule B-4. The trustee opposed Thurman's move citing T.C.A. § 56-7-203.

In an October 29, 1990 decision, Judge Lundin held that Thurman could not exempt his life insurance policy from the claims of his creditors because the named beneficiary on the policy does not fit within the requirements of T.C.A. § 56-7-203.

This appeal presents two issues for the Court to consider. First, whether T.C.A. § 56-7-201 grants an exemption in the cash surrender value of an insurance policy on the life of the debtor where the beneficiary is the debtor's sole proprietorship. Second, whether Thurman's life insurance policy was made for the benefit of his wife within the meaning of T.C.A. § 56-7-203.

## II.

This appeal revolves around the statutory interpretation of two closely-related Tennessee Code sections, T.C.A. §§ 56–7–201 and 203. Section 201 provides in pertinent part that:

Any life insurance effected by a husband or wife on his or her own life shall, in case of his or her death, inure to the benefit of the surviving spouse and children, and the money thence arising shall be divided between them according to the statutes of distribution, without being in any manner subject to the debts of the decedent.

Section 203, originally enacted in 1925, provides that

The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person made for the benefit of, or assigned to, the wife and/or children, or dependent relatives of such persons, shall be exempt from all claims of the creditors of such person arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the name of the beneficiary is reserved by or permitted to such person.

No Tennessee court or federal court sitting in diversity and applying Tennessee law has fully examined the interaction between these two statutory subsections. Indeed, precedent on the issue of whether § 201 may apply to exempt the cash surrender value of an insurance policy has diverged on a number of occasions. That confusion stems in part from the ambiguous wording of the pertinent statutes. Neither § 201 nor § 203 expressly addresses whether the "cash surrender value" of an insurance policy is exempt from creditors.

As Judge Lundin points out, Tennessee courts were divided about the intent of § 201's predecessor. For instance, *In re Moore*, 173 F. 679 (E.D.Tenn.1909) held that the cash surrender value of a life insurance policy was *not exempt* from creditors during the life of the insured. But a subsequent case, *In re Stansell*, 8 F.2d 363 (W.D.Tenn.1925), held that such a policy which benefitted the insured's wife was *exempt* from creditors during the life of the insured. The *Stansell* court based its decision on *Harvey v. Harrison*, 89 Tenn. 470, 14 S.W. 1083 (1891) and a statute passed in 1875 that it interpreted as applying to the cash surrender value of an insurance policy. Applying this statute, the court held that "the cash surrender value of a life insurance contract is as much 'the proceeds of a policy,' as the money due on the policy after the death of the insured. Thus ... the act of 1875 clearly exempts the surrender value of the policies in the instant case from the claim of the trustee of the bankrupt's estate." 8 F.2d at 364.

Thurman argues that the *Stansell* court's interpretation of § 201 was correct and subsequently has been followed by the Tennessee Supreme Court in *Dawson v. National Life Ins. Co.*, 156 Tenn. 306, 300 S.W. 567 (1927) and *Strader v. Aetna Life Insurance Company*, 181 Tenn. 444, 181 S.W.2d 622, 625 (1944). Thurman also correctly observes that Tennessee courts have held that § 201 is to be liberally construed. *American Trust & Banking Co. v. Lessly*, 171 Tenn. 561, 106 S.W.2d 551, 552 (1937). But liberal construction does not necessarily mean any construction advanced by the appellant. In this case, the debtor's proposed interpretation of § 201 conflicts with Tennessee precedent, plain statutory language and long established tenets of statutory construction.

Given the confusion surrounding the scope of § 201, it is no surprise that the Tennessee legislature attempted to redress the issue in a 1925 act entitled "an Act exempting **in certain cases** the proceeds of Life Insurance Policies or Annuities from the Claims of Creditors (emphasis added)." Courts construing that later enacted Tennessee statute have found that it was fashioned to exempt the cash surrender value of a life insurance policy in cases where the policy was, as § 203 delineates, "made for the benefit of, or assigned to, the wife and/or children, or dependent relatives of such persons...."

Perhaps the most important Tennessee Supreme Court precedent on the question of statutory intent is *Lunsford v. Nashville Sav. & Loan Corp.*, 162 Tenn. 179, 35 S.W.2d 395 (1931). In that case, the court held that where a deceased debtor made his life insurance policy payable to a creditor, the insured's dependents could not obtain access to the proceeds of the life insurance policy. The court embarked on an analysis of §§ 201 and 203, observing that:

At the time [the predecessor to § 203] was enacted, there was some doubt as to whether the creditors of an insured could appropriate the cash surrender value of a policy; that is, whether it was exempt from creditors, and, most likely, the statute was passed to remove any doubt as to that matter.

*Id.*

Four months later, the Tennessee Supreme Court reiterated that the express statutory intent of the predecessor to § 203 was to limit the scope of the life insurance exemption to the widow, children, and dependent relatives of the debtor. *Sparkman–Thompson, Inc. v. Chandler*, 162 Tenn. 614, 39 S.W.2d 741, 743 (1931). In that case, the court determined that creditors were allowed to make claims on a life insurance policy that the deceased debtor had made payable to his estate. Thurman errs when he claims that *Sparkman* is not authority for the construction of § 203. Although the court reasoned that the predecessor to § 203 did not apply in *Sparkman*, it had to construe the statute to reach its conclusion. In fact, it wrote that "[c]onsideration of [the predecessor to § 203] greatly strengthens the conclusion reached in the cause before us." *Id.* The court then went on to conclude that the legislative purpose of the 1925 Act was "to confine the exemption to insurance which may be enjoyed by wife, child, or dependent relative of the insured." *Id.* It distinguished § 203 from the case where a contract of insurance has matured by the death of the insured. *See also Overman v. Overman*, 570 S.W.2d 857, 859 (Tenn.1978) (holding that clear intent of § 203 is "to deliver intact to the present wife the proceeds of an insurance policy or an annuity

upon the life of a debtor, where the policy or annuity was made for the benefit of the wife of the debtor").

Since Thurman made his own company the beneficiary of his life insurance policy, Judge Lundin reasoned that the beneficiary fell outside of the scope of beneficiaries explicitly named by § 203 and thus was not exempt from the claims of Thurman's creditors.

In support of his claim for exemption, Thurman suggests a broad reading of § 201 which would allow him to shelter the cash surrender value of an insurance policy payable to his business. Thurman argues that § 203 was designed to expand, not contract, the scope of § 201 to include annuities and dependents of the debtor. As noted *supra*, § 201 is vague to the extent that it does not address whether the cash surrender value of a life insurance policy may be exempt from creditors.

The thrust of Thurman's argument hinges on the Tennessee Supreme Court's opinion in *Dawson v. National Life Ins. Co.*, 156 Tenn. 306, 300 S.W. 567 (1927). Although decided subsequent to the passage of the predecessor of § 203, the *Dawson* court nonetheless held that § 201 exempts a debtor's life insurance policy from creditors prior to the insured's death. The court reasoned that "[i]f creditors could impound and appropriate the insurance the day before the death of the insured, the object of the statute would fail." *Id.* at 568.

As Judge Lundin correctly points out, the value of *Dawson* soon was undercut by the Tennessee Supreme Court in *Lunsford*. In the latter case, decided four years after *Dawson*, the Court went out of its way in an attempt to reconcile its conclusion regarding the statutory intent of the predecessor to § 203 with the contrary result reached by the court in *Dawson*. It commented that its "attention was not called to the Act of 1925 [by the parties before the Court], and it was not referred to in the [*Dawson*] opinion." *Id.* 35 S.W.2d at 395–96. Moreover, the concern expressed by the *Dawson* court about the statute's goals

being undermined has been addressed by § 203 as long as a debtor specifies that the life insurance policy in question is made for the benefit of a spouse, child or dependent relative.

Despite the court's cautionary rhetoric in *Lunsford, Dawson's* holding was cited in subsequent Tennessee Supreme Court opinion. In *Strader v. Aetna Life Insurance Company*, 181 Tenn. 444, 181 S.W.2d 622, 625 (1944) the Court noted that "[t]he cash surrender value and the sums due on the death of an insured are protected by [the predecessor to § 201] of the Code." But the *Strader* dictum has little, if any, bearing on the facts of this case. The decision does not turn on an interpretation of either § 201 or § 203 and the court does not indicate how the life insurance policy at issue would have been affected by the death of the insured or who the beneficiary would have been.

Thurman argues that Judge Lundin's decision overrules *Dawson* and repeals § 201 by implication. As discussed *supra*, *Dawson* already has been undermined by the Tennessee Supreme Court in *Lunsford*. With respect to the latter claim, Thurman reads more into the bankruptcy court's opinion than is warranted. Both sections at issue can be reconciled without an express or implied repeal.

■ To begin, where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed intention to the contrary, to regard each as effective. *Bible & Godwin Const. Co., Inc. v. Faener Corp.*, 504 S.W.2d 370, 371 (Tenn.1974). Judge Lundin's opinion does not necessarily repeal § 201. It does, however, limit the application of that section. These two sections can be read together to provide a family with the means to exempt all life insurance policies from creditors, even while the policy holder is alive.

■ The primary goal of § 201 is to favor the close family members of a deceased debtor at the expense of creditors where a life insurance policy is at stake. The statute is designed to lend a financial hand to the surviving members of family in the tragic situation where a parent files for bankruptcy and then dies. The plain language of the statute reinforces such an interpretation. Section 201 is entitled "Life insurance payable to surviving spouse and children" (emphasis added) and is designed to apply only "in case of [the insured's] death." It includes instructions on the appropriate method of "distribution" of the applicable life insurance policies. *See Harvey*, 89 Tenn. at 476, 14 S.W. 1083 (holding that the Act's primary purpose was to exempt life insurance from creditors' claims and the secondary purpose was to provide for disposition of this fund). The legislature amended § 201 in 1972 to make the proceeds of a life insurance policy payable to a testate's estate regardless of the disposition of the insurance in the will. The insurance is still exempt from the claims of creditors but is an asset of the estate "as ordinary cash." The only way for the insurance policy to be subject to the claims of creditors is for the deceased to make an affirmative statement in his will designating such a result. *Phipps v. Watts*, 781 S.W.2d 863, 866 (Tenn.App.1989), *perm. to appeal denied by Supreme Court*, Dec. 4, 1989. *See also* Grade, *Exemption of Life Insurance Policies under Tennessee Statutes and in Bankruptcy*, 11 Tenn.L.Rev. 84, 90 (1933) (even a casual reading of the predecessor to § 201 [indicates it is] operative only after the death of the insured).

By contrast, § 203 does not contain any corresponding language referring to death of the policy holder. Indeed, the language of § 203 demonstrates that it was designed to apply in cases only where the policy holder is still alive. The last clause of § 203 directs that an exemption is valid "whether or not the right to change the name of the beneficiary is reserved by or permitted to such person." In construing the statute, if the court did not recognize any distinction between § 201 and § 203 with respect to whether the policy holder was alive or dead, it would fail in its duty to give every word and phrase of the statute some meaning. *United Canners, Inc.*

*v. King,* 696 S.W.2d 525, 527 (Tenn.1985).[1]

### III.

 Even discounting the applicability of § 201 in this case, Thurman argues that his insurance policy actually was supposed to be "for the benefit of" his wife within the meaning of § 203. The parties stipulated at oral argument that Thurman's wife would be the beneficiary of the debtor's probate estate in the event of his death, although Thurman's will, or any stipulation about his will, is not included in the appellate record.

But the logic behind Thurman's argument conflicts with the facts of the case and the goals of the statute. A partial transcript of the September 25, 1990 hearing before Judge Lundin on the question of who Thurman intended as a beneficiary of his policy reveals that Thurman had obtained insurance policies in the past that specifically named his wife as a beneficiary. Thurman knew that he could name his wife as a beneficiary but expressly chose not to do so in this case. That choice removed his insurance policy from the exemption provided for in § 203.

In addition, the authority for Thurman's theory—i.e. since his will gives all his property to his wife, the insurance policy should be exempt—is based on the language of § 201, not § 203. Section 201 provides that the proceeds of his life insurance policy are payable to a testate's estate regardless of the disposition of the insurance in the will. *See Phipps,* 781 S.W.2d at 866. Section 203 does not contain any corresponding statutory language. Providing Thurman

an exemption in this case would raise concerns about a debtor being able to shelter assets that would ordinarily be awarded to creditors.

For the foregoing reasons, this Court affirms the judgment of the bankruptcy court. An appropriate order will be entered.

1. Even if this court found that the statutes conflicted, two oft-used tenets of statutory construction suggest that the bankruptcy court's opinion should be affirmed. First, a later enacted statute may limit the scope of an earlier statute, if the two laws conflict. 2A Sutherland, *Statutory Construction* § 51.03 (4th ed.1984); *Bible & Godwin,* 504 S.W.2d at 372. In this case, the relevant canon of statutory construction suggests that § 203 should be given precedence since it was passed after § 201. The predecessor to § 203 was enacted in 1925 while the predecessor to § 201 was passed eighty years prior to that in 1846.

  Second, where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment. Again, § 203 is more specific than § 201. It was passed in the wake of several decisions that interpreted § 201 in vastly different fashions. Following its enactment, the Tennessee Supreme Court has held that it was designed to clarify § 201. *See, e.g., Lunsford,* 35 S.W.2d at 395–96. Section 203 shelters the cash surrender value of a life insurance policy from the claims of creditors only for the designated beneficiaries, including a spouse, children, and dependent family members. By contrast, under § 201 protected insurance may be made payable to the insured or his estate.