# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **ELREE L. HORTON, et al**, | ) | Carroll County Chancery Court |
|  | ) | No. 95-CV-79 |
| Plaintiffs/Appellants. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9610-CH-00235 |
|  | ) |  |
| **CARROLL COUNTY, TENNESSEE,** | ) |  |
| **THE BOARD OF COMMISSIONERS** | ) |  |
| **OF CARROLL COUNTY, TENNESSEE,** | ) |  |
| **COUNTY EXECUTIVE WALTER** | ) |  |
| **BUTLER AND CARROLL & HENRY** | ) |  |
| **SOLID WASTE PLANNING REGION,** | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

FILED

September 18, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Chancery Court of Carroll County at Huntingdon.
**Honorable Walton West, Chancellor**

**Elree L. Horton**, Pro Se
**Ethridge Adkisson**, Pro Se

**Robert T. Keeton, Jr.**, Huntingdon, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

This is an action by Elree L. Horton and Ethridge Adkisson, Appellants,[1] against the appellees, Carroll County, Tennessee, the Board of Commissioners of Carroll County, County Executive Walter Butler (hereinafter collectively "County") and C & H Solid Waste Planning Region, for a judgment from the chancery court declaring them exempt from payment of a fee imposed by the County for rural "mailbox" garbage collection.[2] Suit was filed in response to legal proceedings initiated in general sessions court by the Carroll County Solid Waste Authority against those delinquent in payment of the fees, including the appellants. Judgments were entered against the appellants who appealed to circuit court. Their appeals were transferred to the chancery court for consolidation and disposition with the action seeking declaratory relief. After a hearing, the chancellor entered judgment for the appellees finding legal authority for the County's imposition of the mandatory fee.[3] The court also sustained the judgments of the general sessions court. The appellants have appealed, challenging the correctness of the trial court's decision. For the reasons expressed below, we affirm and remand.

The facts of this case are not in dispute. Carroll County entered into a contract with a private company to provide mailbox garbage collection services to its rural residents. The County assessed a fee for this service to all rural households, irrespective of whether they actually utilized the service. Appellants claim exemption from the fee because they dispose of their waste on their own land.

Although Appellants list some seven issues on appeal, we find they may be consolidated into the following three:

1. Whether Carroll County may impose a monthly household

---

[1] James Dwain Barnes was an original plaintiff to this action, but has not appealed from the judgment below and is not considered an appellant in this appeal.

[2] The initial petition was for writ of certiorari and injunctive relief. By agreement of the parties, the petition was treated as a complaint for declaratory judgment.

[3] The monthly fee assessed against Appellants was a total of $6.50 with an additional $2.00 assessed for late payment. In its opinion, the chancellor notes that in the plan adopted by the County, a $6.23 monthly fee was proposed. The chancellor "assumed" that the difference was a billing fee charge by the electrical companies, but found that no such charge was imposed on residents by any action of the Carroll County Board of Commissioners. The court further held the late penalty fee invalid as its collection was not supported by proper County resolution.

garbage collection fee on all its rural county citizens, regardless of whether they desire or utilize the service.

> 2. Whether Carroll County complied with relevant state statutes and properly adopted resolutions when imposing the mandatory fees.

> 3. Whether Appellants were denied due process of law when their circuit and chancery court cases were consolidated for disposition.[4]

As the trial court's decision rested solely on questions of law, our review is ***de novo*** with no presumption of correctness. ***Lucius v. City of Memphis***, 925 S.W.2d 522 (Tenn. 1996). Resolution of the first two issues requires review of various sections of the Tennessee Code. Solid waste disposal is addressed in Chapter 211 of Title 68 of the Code. The chapter was originally comprised of ten parts. Part 1, designated the "Tennessee Solid Waste Disposal Act," was enacted in 1969. Section 68-211-110 provides:

> **Disposal on own land.** -- This part does not apply to any private, natural person disposing waste generated in such natural person's own household upon land owned by such natural person; provided, that such disposal does not create a public nuisance or a hazard to the public health.

Part 8 is identified as the "Solid Waste Management Act of 1991." It states as follows under § 68-211-851(a):

> Effective January 1, 1996, each county shall assure that one (1) or more municipal solid waste collection and disposal systems are available to meet the needs of the residents of the county. . . . The minimum level of service that the county shall assure is a system consisting of a network of convenience centers throughout the county. Unless a higher level of service, such as household garbage pickup, is available to the residents, a county shall provide directly, by contract, or through a solid waste authority, convenience centers which shall meet minimum design standards . . . .

---

[4]Appellees contend that only the issues expressly identified and addressed by the chancellor (whether the County can impose its monthly fee on all county residents regardless of whether they utilize the service and whether Carroll County properly adopted resolutions imposing the fees) may be heard on appeal. The record, however, indicates that the other matters as expressed above were presented by the appellants in a "Motion for a New Trial or to Alter or Amend Opinion and Judgment . . . ." which was denied.

Section 68-211-802 defines "convenience center" as "any area which is staffed and fenced that has waste receptacles on site that are open to the public, when an attendant is present, to receive household waste, . . . ."

Section 68-211-835(g)(1) - (3) provides:

In addition to any power authorized by title 5, a county, municipality or solid waste authority is authorized to impose and collect a solid waste disposal fee. Funds generated from such fees may only be used to establish and maintain solid waste collection and disposal services, including, but not limited to, convenience centers. All residents of the county shall have access to these services. The amount of the fee shall bear a reasonable relationship to the cost of providing the solid waste disposal services. Such fees shall be segregated from the general fund and shall be used only for the purposes for which they were collected.

(2) Subject to any other requirement of law, a county, municipality or solid waste authority may enter into an agreement with an electric utility to collect the solid waste disposal fee as a part of the utility's billing process. The agreement shall be approved by the governing body of the county or municipality entering into the agreement, or, in the case of a solid waste authority, the agreement shall be approved by the authority's board of directors.

(3) A solid waste disposal fee shall not be imposed on any generator of solid waste when the generator's solid waste is managed in a privately owned solid waste disposal system or resource recovery facility owned by the generator.

Chapter 19 of Title 5, T.C.A. §§ 5-19-101 to 116, enacted in 1969, pertains to "garbage and rubbish collection and disposal services." Section 5-19-107(11) provides:

**Powers of counties.** -- The several counties are empowered to do all things necessary to provide such county-wide or special district garbage and rubbish collection and/or garbage and rubbish disposal service, including but not limited to:

. . . .

Establish schedules of, and collect reasonable charges for, any services rendered in any district or area which are not covered by the special tax levy authorized in § 5-19-108 or § 5-19-109 for garbage and rubbish collection and/or disposal in that district or area;

Section 5-19-109(a) and (b)(1)-(3) states:

If less than all persons in the county are to be served, the county, if it chooses to enter into garbage and rubbish collection and disposal activities, must establish a district or districts within which the

service is to be provided.

(b) Such county must pay the full costs of the services to be provided either:

(1) From the proceeds of a tax levied only on property within the district or districts;

(2) From the proceeds of a schedule of service charges levied upon the recipients of the services in the district or districts; or

(3) From a combination of both such a tax levy and service charge levy.

Finally, § 5-19-116 sets forth:

**Householders' rights preserved.** -- this chapter shall not prohibit an individual householder from disposing of solid waste from such householder's own household upon such householder's own land; provided, that such disposal does not create a public nuisance or a hazard to the public health.

It is Appellants' contention that § 68-211-110 of the Solid Waste Disposal Act operates to exempt them not only from that Act's provisions but from "all areas of law dealing with solid waste disposal," provided they do not create a nuisance or health hazard when disposing of their own waste on their land. Although they acknowledge that Part 8 contains no like exemption, they argue that it is not necessary that it do so because of the express exemption in Part 1. They assert that because Part 1 already exempts certain persons from the laws dealing with waste disposal, "it is not necessary to include the exemption again in the statutes that deal with the management of waste facilities."

The most basic principle of statutory construction is to ascertain and give effect to the intention and purpose of the legislature. Such intent is to be ascertained primarily from the natural and ordinary meaning of the language used, without any forced or subtle construction that would limit or extend the meaning of the language. *Tuggle v. Allright Parking Systems, Inc.*, 922 S.W.2d 105, 107 (Tenn. 1996). We are to avoid a construction that places one statute in conflict with another and must resolve any possible conflict between statutes in favor of each other to provide harmonious operation of the laws. *Sharp v. Richardson*, 937 S.W.2d 846, 849 (Tenn. 1996); *Holder v. Tennessee Judicial Selection Comm'n*, 937 S.W.2d 877, 883 (Tenn. 1996). Where two statutes are capable of coexistence, it is this Court's duty, absent clearly expressed intention to the contrary, to regard each statute as effective. *In re Thurman*, 127 B.R. 401, 405 (M.D. Tenn. 1991).

We do not find the two Acts discussed above to be conflicting in their provisions. Nor do we find their language ambiguous. Clearly, both Acts' provisions are capable of coexistence and harmonious operation. We agree with the trial court that § 68-211-110 clearly and unambiguously excludes all those who meet its criteria from the provisions of the Solid Waste Disposal Act, including the requirements of registration and the imposition of criminal penalties for violation thereof. *See* T.C.A. §§ 68-211-106 and 114. (R. 129). However, it is equally clear that such persons meeting the criteria set forth under § 68-211-110 are excluded only from "this part" - Part 1. We also point out that Part 1 does not include any provisions concerning the imposition of solid waste disposal fees. No like exemption is found within the provisions of Part 8, which expressly pertains, in part, to the collection of a solid waste disposal fee by "a county, municipality or solid waste authority." § 68-211-835(g)(1).

We cannot agree with the appellants that it was not necessary to include a like exemption in Part 8 because of § 68-211-110. It is presumed that each word used in a statute has meaning and purpose and, thus, each word should be given full effect if doing so would not violate the legislature's obvious intent. *Eyman v. Kentucky Cent. Ins. Co.*, 870 S.W.2d 530, 531 (Tenn. App. 1993). Moreover, when the words of a statute are plain and unambiguous, we assume the legislature intended what it wrote and meant what it said. *Worley v. Weigels, Inc.*, 919 S.W.2d 589, 593 (Tenn. 1996). Section 68-211-110 clearly establishes that the persons meeting its criteria are exempt only from "this part." If the legislature had intended otherwise, it could have expressly included such exemption when enacting the 1991 Act or amended the prior Act. The legislature is presumed to have knowledge of its prior enactments and to know the state of the law at the time it passes legislation. *Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn. 1995); *Holder*, 937 S.W.2d at 833.

Further, we agree with the reasoning as expressed by the trial court in construing the Acts, when stating:

> T.C.A. § 68-211-835(g)(1) allows a county or solid waste authority to impose and collect a fee for establishing and maintaining solid waste <u>collection and disposal services, including convenience centers</u>. The convenience centers are to be open to the public as provided in T.C.A. § 68-211-802(a)(4).
>
> T.C.A. § 68-211-835(g)(2) allows a county to enter into an

agreement with electric utilities to collect the fee for the provided waste disposal services.

Did the Legislature intend that if a person desires not to use convenience centers placed throughout a county that this person would be exempt from helping defray the cost of such centers? The answer is clearly no, considering that the above cited statutes provide that utility companies may collect the fees for operating the convenience centers, effectively from all households, and that "all residents of the county shall have access to these services."

The household garbage pick-up is merely a "higher level of service" than convenience centers offered residents, as noted in T.C.A. § 68-211-851(a).

Did the Legislature intend that if certain persons prefer not to use household garbage collection provided by the county that they would be exempt from the fee? Again, this does not appear to be the intent of the above cited statutes. It would not appear logical to conclude that all residents are responsible for the cost of convenience centers, irrespective of use, yet not responsible for the cost of collecting household garbage, even if not used. There is no distinction made in the statutes between the two services relative to the method of assessing costs for the services.

Appellants additionally rely upon the provisions of § 68-211-835(g). As noted, this section precludes the imposition of a solid waste disposal fee on any generator of solid waste if it is managed in a privately owned solid waste disposal system or resource recovery facility owned by the generator. A "solid waste disposal system" is defined at T.C.A. § 68-211-103(10)[5] as "the relationship of the coordinated activities of and resources for processing and disposal of solid wastes within a common geographical area and under the supervision of any person or persons engaging in such activities." A "resource recovery facility" is defined in § 68-211-902(7) as "land, rights in land, buildings, facilities and equipment suitable or necessary for the recovery or production of energy or energy producing materials in any form resulting from the controlled processing or disposal of solid waste or the systematic separation, extraction and recovery of recyclable materials from the solid waste stream, including facilities or systems for the storage, conversion or transportation thereof." Based on the foregoing definitions, we conclude that the exemption in Part 8 does not apply to the

---

[5]T.C.A. § 68-211-802(b) provides that the definitions set forth in § 68-211-103 and "in any regulations promulgated pursuant to this chapter" apply to the terms used in Part 8, unless the context requires otherwise or the term is defined differently by that section. We note that the record indicates that pursuant to Rule Chapter 1200-1-7, promulgated by the Department of Environment and Conservation and which became effective January 31, 1996, a "privately owned solid waste disposal system" is defined as "a solid waste disposal system owned by a non-governmental entity which processes or disposes of its solid waste in facilities that have either a valid permit or a permit-by-rule."

solid waste disposal activities of individual households such as that of Appellants.

With respect to Title 5, we are cognizant of the fact that it, too, provides for the rights of individual householders to dispose of their own waste upon their own land, provided such disposal is not hazardous to the public or does not constitute a public nuisance. T.C.A. § 5-19-116. However, as aptly pointed out by the chancellor, § 5-19-116 does not grant to these householders an exemption from payment of the fees for either mailbox garbage pickup or the establishment of convenience centers or from payment of a property tax (which the County could have opted for under § 5-19-109(b)(1)). The trial court reasons:

> All Carroll County residents who do not reside in a municipality can use the garbage pick-up services offered by the county if they elect to do so. All such rural residents are recipients of the household garbage pick-up service offered, even if they choose to skip a week, a month or all services.
>
> T.C.A. § 5-19-107 provides that a county may:
>
> (11) Establish schedules of, and collect reasonable charges for, <u>any services rendered</u> in any district or area which are not covered by the special tax levy . . . .
>
> "Rendered," according to the <u>Random House Dictionary</u>, 1980, means "to furnish or provide." Again it is not disputed that in the instant case the parties resisting the mandatory fee are furnished or provided the pick-up service.

We conclude that the reasoning set forth by the chancellor in interpreting the various statutes is sound and that it provides for "harmonious operation of the laws." We therefore agree that Carroll County may legally impose a monthly fee on all its rural residents for solid waste disposal services regardless of whether the services are actually utilized.

Appellants' second issue pertains to whether the County has taken the necessary legal steps to impose the solid waste disposal fees. T.C.A. § 68-211-813(a)(1) provides for the establishment of "municipal solid waste regions" by resolution of the respective county legislative bodies. The region shall consist of one or two or more contiguous counties. The resolution "shall provide for the establishment of a board to administer the activities of the region." § 68-211-813(b)(1). Subsection (c) requires each region to develop a solid waste management plan "for a ten-

year disposal capacity." The plan must be approved by the Department of Environment and Conservation and include information regarding costs of collection, disposal and maintenance and "[r]evenues, including cost reimbursement fees, appropriations and other revenue sources." T.C.A. § 68-211-815(b)(2)(D) - (E). Section 68-211-903(a) of the Solid Waste Authority Act of 1991 (Part 9) states that "[a] county or any of the counties in a municipal solid waste region may create a solid waste authority, by resolution of the respective county governing bodies . . . . Any resolutions creating, amending or dissolving an authority shall be . . . sent to the secretary of state and the commissioner." Section 68-211-904 requires that the resolution creating an authority shall provide for the establishment of a board of directors to administer the authority's activities.

The record before us includes a "Resolution To Approve The Necessary Steps To Site, Permit, Finance, And Construct A Carroll County Landfill And Implement Rural Waste Collection" passed and approved March 9, 1992. The resolution includes the recommendation by the Carroll County Solid Waste Committee that "door-to-door trash collection be provided for all rural citizens of Carroll County as a means to meet the requirement of the 1991 Solid Waste Management Act." The resolution further denotes the committee's recommendations that the County "impose and collect a solid waste disposal fee to be used only to establish and maintain solid waste collection for the rural citizens of Carroll County and solid waste disposal for all citizens of Carroll County" and contract with electric utility districts to collect the fee in conjunction with the utility's billing process. By amendment, § 6 was added to the resolution to state that "[a]ll options for collection, disposal, and funding be explored, and all options explored be presented before the full commission for consideration." Resolution No. 12-1-92 provides for the creation of the "Carroll, Benton and Henry Counties Municipal Solid Waste Planning Region" (CBH Region). The resolution provides for a nine member "municipal solid waste region board." The record reflects a resolution approving the "ten-year plan" of the CBH Region and providing for its submission to the state for approval. The plan provides for the collection of a rural residential garbage collection fee. The Carroll County Board of Commissioners approved the County's entry into contracts with a private company for rural trash collection and disposal by resolution approved April 11, 1994. Resolution No. 10-2-94 dissolves the CBH Region and creates the Carroll and Henry County Municipal Solid Waste Region. It also establishes a municipal solid waste region board to be comprised of seven members. Resolution No. 1-2-95 denotes the establishment of an "amended"

planning region, the state's approval of its solid waste regional plan and the authorization of legal proceedings against those delinquent in payment of the monthly service fees for mailbox garbage collection. Resolution No. 2-2-95 of the Carroll County Board of Commissioners confirms an appointment to the solid waste region board. Finally, the Carroll County Board of Commissioners authorized the creation of a county solid waste authority by resolution approved September 16, 1991.

The appellants contend that the County failed to register with the Secretary of State when creating the Carroll County Solid Waste Authority (in whose name suit was brought against the appellants) and failed to appoint a governing board to serve on the authority. T.C.A. § 68-211-904 provides that "[t]he authority's board of directors may be the same board as that of the municipal solid waste region or it may be a separate board." Although it is unclear whether a separate board was created for the authority, a board of directors was composed by appropriate resolution for the solid waste region which may also serve the authority. Moreover, we note that Part 9 states only that a solid waste authority "may" be created by the municipal region. It is not mandatory. Under Part 8, however, the respective county legislative bodies are required to establish municipal solid waste regions. The County did this, by resolution, along with creating a board of directors to serve thereon and instituting a ten year plan approved by the state which includes the imposition of a fee for solid waste collection and disposal on all its rural residents. We conclude that the County has complied with existing Tennessee law in imposing the respective fee on Appellants.

We do not find that Appellants' rights of due process were violated by the transfer of their appeals to the chancery court for disposition. Resolution of the chancery court matter necessarily determined the outcome of their appeals. The record includes an order from the circuit court transferring their respective causes (appeals) to chancery court and instructions to the court clerk to send attested copies thereof to the litigants or their attorneys. The record further indicates that Appellants were represented by counsel at the hearing in chancery court.

The judgment of the trial court is affirmed and this cause remanded for any further proceedings consistent herewith. Costs are taxed to the appellants, for which execution may issue if necessary.

_____

FARMER, J.

_____

CRAWFORD, P.J., W.S. (Concurs)

_____

HIGHERS, J. (Concurs)